# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TWELVE SIXTY LLC,<br>ARON MARDEROSIAN, and<br>ROBERT MARDEROSIAN,<br><br>          Plaintiffs,<br><br>       v.<br><br>VIACOM INTERNATIONAL INC.,<br>ON-SITE PRODUCTIONS INC.,<br><br>         Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES<br>AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs TWELVE SIXTY LLC, ARON MARDEROSIAN, and ROBERT MARDEROSIAN (collectively referred to herein as "PLAINTIFFS") and submit the following Complaint for Damages and Demand for Jury Trial against Defendants VIACOM INTERNATIONAL INC. and ON-SITE PRODUCTIONS INC. (collectively referred to herein as "DEFENDANTS").

## PARTIES

1. Plaintiff TWELVE SIXTY LLC is a California limited liability company duly organized and existing under the laws of the State of California, having a place of business in the County of Los Angeles.

2. Plaintiff ARON MARDEROSIAN is an individual who resides and works in the County of Los Angeles in the State of California.

3.     Plaintiff ROBERT MARDEROSIAN is an individual who resides and works in the County of Los Angeles in the State of California.

4.     PLAINTIFFS are informed and believe and based thereon allege that VIACOM INTERNATIONAL INC. (referred to herein as "VIACOM") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at 1515 Broadway, New York, NY 10036.

5.     PLAINTIFFS are informed and believe and based thereon allege that ON-SITE PRODUCTIONS INC. (referred to herein as "ON-SITE") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at 1515 Broadway, New York, New York 10036.

6.     On information and belief, ON-SITE is an alter ego of VIACOM and VIACOM controls and operates ON-SITE, such that ON-SITE has ceased to exist as a separate entity. Specifically, on information and belief, VIACOM executives and employees serve and operate on behalf of Defendant ON-SITE.  VIACOM executives sign contracts on behalf of ON-SITE.  The principal place of business for both VIACOM and ON-SITE are in the same location and specifically 1515 Broadway in New York, New York.  On information and belief, officers, managers, and/or directors of ON-SITE are also officers, managers, and/or directors of VIACOM.  ON-SITE and VIACOM are agents of one another and/or alter egos of one another.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8.     This Court has personal jurisdiction over DEFENDANTS because both DEFENDANTS have their principal place of business in the state of New York.

9.     Venue is proper in this District by virtue of 28 U.S.C. § 1391(c) because each of the DEFENDANTS operates within this judicial district.

## FACTUAL BACKGROUND

10.     Plaintiff ARON MARDEROSIAN and Plaintiff ROBERT MARDEROSIAN (referred to herein as "MARDEROSIANS") are well-known and established song writers, musicians and producers of musical recordings. The MARDEROSIANS are known professionally as "Heavy Young Heathens." The MARDEROSIANS have written, produced, and performed hundreds of musical compositions included in and used to promote numerous theatrical motion pictures, television series and video games, including by way of example, musical compositions featured in such recent motion films as Rules Don't Apply, Masterminds and Supermensch, as well as prominent trailers for The Magnificent Seven, Deadpool, The Amazing Spider-Man and The Expendables 2. Their music has additionally been placed in numerous television programs such as The Simpsons, CSI, Jersey Shore, Punk'd and ESPN's 30 for 30, and commercials for Starbucks, Chrysler, Dodge, Ford, Bacardi, Adidas and Red Bull.

11.     Plaintiff TWELVE SIXTY LLC is the limited liability loanout company owned and operated by the MARDEROSIANS for purposes of licensing their music.

12.     On or about January 14, 2014, PLAINTIFFS and ON-SITE entered into a "Loanout Agreement" in connection with the television production then entitled "Are you the One?". A copy of the "Loanout Agreement" is attached hereto as Exhibit A.

13.     The "Loanout Agreement" and its Exhibit A attached hereto provided that PLAINTIFFS (referred to therein as "Composer") agreed to provide services including, without limitation, "(a) writing, composing, arranging, orchestrating, conducting and delivering to Company suitable original musical material" to serve as the "theme song" for "Are You the One?".

14.     In exchange for this work, Company (defined as "On-Site Productions Inc.") agreed to pay PLAINTIFFS $10,000.00.  In addition, PLAINTIFFS were entitled to receive their "writer's share" of public performance income which should have been paid through their performing rights society, BMI.  DEFENDANTS retained 100% of the "publisher's share" of the public performance income.  DEFENDANTS assigned the publishing to their agent, Music By Video Inc., who was responsible for proper registration of the work with the PLAINTIFFS' designated performing rights organization (BMI) in order for both the writer and the publisher to collect all public performance income.

15.     In addition, pursuant to the terms of the "Loanout Agreement", the Heavy Young Heathens were supposed to receive credit in the end titles of each "premier" episode where the song is used as the theme song.

16.     PLAINTIFFS wrote, performed, and produced a song entitled "Smooth Hand" which was accepted by DEFENDANTS and used domestically and internationally as a theme song for the television program "Are You The One?" and its related Viacom distributed spinoff series.

17.     Despite PLAINTIFFS fulfilling their obligations under the terms of the "Loanout Agreement",  DEFENDANTS breached the terms of the contract by failing to properly register "Smooth Hand" with the designated performing rights organization (BMI) ahead of "premier" television airings, and failing to file cue sheets and/or require the filing of cue sheets in order for

PLAINTIFFS to properly collect their royalties per the terms of the agreement (Exhibit A, section 6(b)), which has and continues to deprive PLAINTIFFS of the writer's share of royalties that were owed from DEFENDANTS' exploitation of PLAINTIFFS' song.

18.     The aforementioned conduct of DEFENDANTS, and each of them, has caused significant damage to PLAINTIFFS in the form of lost royalties and lost credit.

## FIRST CLAIM

### (Breach of Contract)

19.     PLAINTIFFS incorporate Paragraphs 1 through 18 as though fully set forth herein.

20.     As alleged hereinabove, PLAINTIFFS and ON-SITE entered into a "Loanout Agreement" for purposes of creating, performing, and delivering a theme song for the television program "Are You The One?".

21.     PLAINTIFFS fulfilled all obligations under the terms of the "Loanout Agreement"; however, the DEFENDANTS did not.

22.     The DEFENDANTS breached the terms of the "Loanout Agreement" by depriving PLAINTIFFS of the "Writer's Share" of royalties they were entitled to under the terms of the "Loanout Agreement".  Specifically, in order to receive the "Writer's Share" of royalties, the exploiter, or in this case, DEFENDANTS and/or their agents, needed to file or require the filing of a cue sheet with the PLAINTIFFS' performing rights organization which details the use of the song. On information and belief, the DEFENDANTS' failed to submit or require the submission of  such information for "Are You The One?" as aired domestically,  internationally and at least in Brazil and other Latin American countries, which deprived PLAINTIFFS of the writer's share of royalties to which they were entitled.

23.   DEFENDANTS breached the terms of the "Loanout Agreement" by depriving PLAINTIFFS of the "Writer's Share" of royalties they were entitled to under the terms of the "Loanout Agreement".  Specifically, in addition to the conduct described in Paragraph 22 above, DEFENDANTS deliberately and intentionally disregarded the terms and continue to breach the "Loanout Agreement" to exploit "Smooth Hand" as a theme for the original "Are You The One?" US series (six seasons), "Aftermatch" and the theme for multiple international spinoff series, commercials, teasers and promos thereby depriving PLAINTIFFS of the writer's share of royalties from these exploitations both domestically and internationally.

24.   DEFENDANTS breached the terms of the "Loanout Agreement" by failing to give PLAINTIFFS proper credit in the end credits as required by the "Loanout Agreement" for multiple seasons of "Are You The One?".

25.   The conduct of DEFENDANTS as described herein has caused and continues to cause significant economic damages to the PLAINTIFFS in an amount to be proven at the time of trial but far in excess of the jurisdictional requirements.

## DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a jury trial.

## PRAYER

WHEREFORE, PLAINTIFFS demand judgment as follows:

1.   Economic Damages;

2.   Attorneys fees and costs;

3.   Pre-judgment and post-judgment interest; and

4.      Such other and further relief as this Court deems just and proper

Dated:  January 5, 2018                 Respectfully submitted,


 /s/ Michael G. Marderosian
Michael G. Marderosian (*Pro Hac Vice*)
Heather S. Cohen (*Pro Hac Vice*)
MARDEROSIAN & COHEN,
A PROFESSIONAL CORPORATION
1260 Fulton Street
Fresno, CA 93721
Tel:  (559) 441-7991
Fax:  (559) 441-8170
Email:  mick@mcc-legal.com
Email:  heather@mcc-legal.com

EXHIBIT A

## LOANOUT AGREEMENT

This agreement is made as of January 14, 2014 by and between On-Site Productions Inc. ("Company") and Twelvesixty, LLC (herein called "Lender"), as follows:

1.      Lender hereby agrees to loan Company the services of Robert J. Marderosian and Aron Michael Marderosian, together the artists professionally known as "Heavy Young Heathens" (collectively referred to as the "Composer") in connection with the television production currently referred to as "Are You The One?"

2.      Reference is hereby made to that certain composer agreement dated as of January 14, 2014 between Company and Composer, a copy of which is attached hereto as Exhibit "A" and hereby made a part hereof.  All provisions of Exhibit "A" shall be deemed included as part of this agreement as though fully set forth herein; it being understood, however, that:

      (i)      wherever reference is made to payments to Composer, such reference shall be deemed to refer to payments to Lender; and

      (ii)     all rights granted by Composer in Exhibit "A" shall be deemed granted by Lender as well, and all warranties, agreements, duties, liabilities, obligations and indemnifications given, made and/or assumed by Composer therein shall be deemed given, made and/or assumed by Lender as well.

3.      As compensation in full for services of Composer to be furnished by Lender hereunder and for all rights granted and agreed to be granted herein, Company will pay to Lender directly, without payroll deductions of any kind whatsoever, except as may be required by any applicable law, regulation, ordinance or order, foreign or domestic, all monies which may become due and payable pursuant to Exhibit "A," as, when and to the extent such payments become payable.

4.      The parties hereto are entering into this agreement as independent contractors, and no partnership or joint venture or other association shall be deemed created by this agreement.  Lender will have the entire responsibility of employer of Composer and will discharge all of the obligations of employer under any federal, state or local laws, regulations, ordinances or orders, foreign or domestic, now or hereafter in force, including, but not limited to, those relating to taxes, unemployment compensation or insurance, social security, disability pensions, tax withholding and including the filing of all returns and reports required of employers and the payment of all taxes, assessments and contributions and other sums required of employers.  Lender will deduct and withhold from the consideration payable by Lender to Composer all amounts required to be deducted and withheld under employment agreements under the provisions of any statute, regulation, ordinance or order, foreign or domestic, requiring the withholding or deduction of compensation.

5.      (a)      Lender warrants that Lender is and has been for more than thirty (30) days prior to the date hereof, a corporation, duly organized and existing under the laws of Lender's place of incorporation and is a bona fide corporate business entity established for a valid business purpose within the meaning of the tax laws of the United States and not a mere sham, conduit, or agent for Composer.

      (b)      Lender warrants that Composer is under an exclusive employment services contract with Lender and will continue to be throughout the term of this agreement; that Lender has the exclusive right to direct Composer as to when and how Composer performs Composer's services; that Lender has and will have the right to furnish Composer's services to Company hereunder for the term of this agreement; and that Lender has and will have the right to grant all rights of whatsoever nature in and to the results and proceeds of such services.

      (c)      Lender warrants that Lender will discharge all duties as employer of Composer under and pursuant to the terms of all applicable laws, regulations, ordinances and orders, foreign or domestic.

(d)      Lender hereby agrees to indemnify and hold harmless Company, its successors, transferees, assigns and licensees, and the respective agents, associates, directors, officers and employees of each, free and clear from and against any and all damages, costs, expenses, claims and causes of action (including, but not limited to, reasonable outside attorneys' fees and costs in the defense and disposition of such matters), in any way arising by reason of (i) any claim for compensation by Composer and/or claims for payment by any third party related in any way to Composer's employment by Lender, (ii) any failure on Lender's part to make or pay the required deductions and/or withholdings from the compensation payable by Lender to Composer, and/or (iii) the breach by Lender and/or Composer of any provision, agreement and/or warranty contained in this agreement (including, without limitation, Exhibit "A" hereto).

(e)      Notwithstanding anything to the contrary set forth above, Lender and Composer hereby warrant and represent that for the purpose of any applicable workers' compensation statutes (the "Statutes"): the employment relationship exists between Company and Composer; Composer is Company's special employee; Company is Composer's special employer; and Lender is Composer's general employer (as the terms "special employee", "special employer" and "general employer" are understood for purposes of the Statutes).  In this regard, Lender and Composer warrant and represent that (i) any rights and remedies of Composer (or Composer's heirs, executors or administrators) against Company (or Company's principals, officers, agents and/or employees, including, without limitation, any other special employee of Company) by reason of any injury, illness, disability or death of Composer (collectively, "harm to Composer") covered by the Statutes and arising out of and in the course of Composer's services hereunder, will be limited to those rights and remedies provided under the Statutes; (ii) Company (and Company's principals, officers, agents, and/or employees, including, without limitation, any other special employee of Company) shall have no obligation or liability to Lender (or Lender's principals, assignees, licensees, transferees or designees) by reason of harm to Composer; and (iii) neither Lender nor Composer (or the successors in interest of either) shall assert any claim arising out of harm to Composer against any other entity which furnishes to Company the services of any other special employee.  Company and Lender hereby make any election whatsoever necessary to render the Statutes applicable to Company's engagement of Lender and/or to Composer's services hereunder.

(f)      The warranties and indemnities set forth herein are in addition to, and not in limitation of, those contained in Exhibit "A".

(*Signature page to follow*)

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the day and year first above written.

ON-SITE PRODUCTIONS INC.

By: _____

Its: _____

AGREED TO AND ACCEPTED BY:

TWELVESIXTY, LLC

By: _____

Its: C.F.O._____

Federal I.D.#: 22-3898606

Composer hereby acknowledges that Composer has read and is familiar with each and every provision of this Agreement, including Exhibit "A" attached thereto.  Composer hereby endorses and approves this Agreement and agrees to be bound thereby and to perform all the terms and conditions thereof insofar as the same are to be performed by Composer in the same manner as if Composer had executed this agreement directly with Company.  Furthermore, Composer acknowledges that Company would not, without this endorsement and approval, have entered into said Agreement.

By: _____
        Robert J. Marderosian

By: _____
        Aron Michael Marderosian

758665                                    3

Exhibit "A"

## COMPOSER AGREEMENT

By and between On-Site Productions Inc. ("Company"), 1515 Broadway, New York, NY 10036, and Robert J. Marderosian ("Mardo") and Aron Michael Marderosian ("Marderosian"), together the artists professionally known as "Heavy Young Heathens," P.O. Box 6470, Malibu, CA 90264 (this "Agreement"). Mardo and Marderosian shall collectively be referred to herein as the "Composer."

Dated:  As of January 14, 2014.

1. **ADDRESS AND PAYMENT INFORMATION:**

| | |
|---|---|
| Checks payable to: | Robert J. Marderosian and Aron Michael Marderosian |
| Payment address: | P.O. Box 6470 |
| | Malibu, CA 90264 |
| Telephone: | 310.457.0133 |
| Agent and Telephone: | |
| Social Security #: | TIN# 22-3898606 |

2. **PROJECT:**

| | |
|---|---|
| Tentative Project title: | **"Are You the One?" ("Project").** |
| Description of Project: | **Original composition of one (1) theme song.** |

3. **SERVICES:**

Composer agrees to render services for Company and/or its designee(s) as a composer and audio producer.  These services shall include, without limitation, (a) writing, composing, arranging, orchestrating, conducting and delivering to Company suitable original musical material, whether consisting of lyrics and/or sound effects ("Compositions") and performing, recording, producing, mixing, dubbing and delivering to Company suitable original audio recordings of the Compositions (the "Masters"); (b) any and all services customarily provided by first class audio producers and composers; and (c) any and all other services Company requests. Company may employ or engage other persons as composers, lyricists, arrangers, orchestrators, copyist, adapters or conductors and such other persons may, at Company's direction, modify, edit, adapt, re-record or make any other changes to the Compositions as requested by Company.  All services provided hereunder shall be pursuant to the direction and control of Company and are subject to Company's approval in its sole discretion.  Notwithstanding anything to the contrary contained in this Agreement, Company shall be under no obligation to use the results and proceeds of Composer hereunder.

4. **TERM:**

The Term of this Agreement shall commence on the date hereof and will continue until the earlier of completion of Composer's services (as determined by Company) or termination of this Agreement by Company (the "Term").  Company shall have the right to terminate the Term of this Agreement at any time, with or without cause, subject to Company's obligation to pay Composer any accrued but unpaid compensation for services already actually completed by Composer.

5. **DELIVERY:**

Composer's Services hereunder shall not be deemed completed until delivery to, and acceptance by Company of: (a) Masters which are technically, commercially and creatively acceptable to Company in its sole discretion, on or before dates to be determined by Company; (b) all original manuscripts, all lyric and lead sheets, conductor's score, instrumental and vocal parts and other music of every kind prepared in connection with the Masters and Compositions (whether or not, in Composer's possession, or under Composer's direct control); (c) the Masters in accordance with the specifications set forth in Schedule 1 and (d) a completed Exhibit "B". Composer shall promptly make all changes requested by Company. Composer agrees that delivery of the Masters in accordance with the timeline set forth by Company is of the essence of this Agreement.

6. **COMPENSATION/PAYMENT SCHEDULE:**

(a)       Provided that Company has received a copy of this Agreement signed by Composer, Composer has complied with all applicable requirements, including, but not limited to, signing and delivering to Company any and all required tax and immigration forms (as applicable) and Composer is not in breach or default of this Agreement, Composer shall receive a one-time all-inclusive payment in the amount of Ten Thousand Dollars ($10,000) in full consideration of the services performed, materials furnished and rights acknowledged or granted under this Agreement, including without limitation, all Recording Costs (as defined in Section 6(c) below), subject to Composer's full performance of the terms of this Agreement. The foregoing compensation shall be payable 50% upon complete execution of this Agreement and 50% following Composer' completion, and Company's acceptance, of all services and materials required hereunder, including, without limitation, Composer's completion and delivery to Company of Exhibit "B". Composer's compensation is subject to all withholdings and deductions that employers are required to make by law. Company is not obligated to pay Composer until Composer has furnished to Company all documents required by the Immigration Reform and Control Act of 1986. Composer shall comply with all eligibility verifications required by law.

(b)       Composer acknowledges and agrees that, except as otherwise specified in subparagraph 6(a) above, Composer shall not be entitled to any other compensation whatsoever in connection with Composer's services hereunder and/or the exploitation of the Compositions and the Masters, including, without limitation, any songwriter royalties, mechanical royalties, phonorecord royalties, synchronization fees, master use license fees or print royalties. Composer acknowledges that this agreement constitutes a full buy-out of any and all rights to the Compositions and Masters. Notwithstanding the foregoing, Composer and Company hereby acknowledge and agree that Composer shall be entitled to, as between Composer and Composer's performance rights society to ,receive and retain Composer's respective portion of the so-called "writer's share" of public performance income (if any) which may be payable directly from Composer's performing rights society such as ASCAP, BMI and SESAC, and Company will retain one hundred percent (100%) of the so-called "publisher's share" of public performance income and one hundred percent (100%) of all other publishing income. Composer hereby acknowledges and agrees that receipt by Composer of Composer's respective portion of such so-called "writer's share" of public performance income (if any) shall be the sole responsibility of Composer and shall occur solely through the efforts and at the expense of Composer. Composer confirms that Mardo is a member of BMI and Marderosian is a member of BMI. If Composer co-writes a Composition, either from inception or subsequently (e.g., an

additional composer and/or lyricist is hired to compose additional music for the Composition and/or rewrite all or part of the lyrics at a later date or an additional wrier is otherwise granted or receives a writer's credit on the Composition concerned) then Composer acknowledges and agrees that Composer's share of the performance royalties shall be reduced proportionately in accordance with Composer's contribution to the work as agreed among Composer and the co-writer(s), but in the absence of such agreement, or if the Compositions are subsequently altered or modified, the assessment of such reduction shall be made solely by Company.  Composer hereby acknowledges that Company is acquiring hereunder, at no additional cost to Company, a U.S. theatrical performance "buy-out" with respect to the theatrical performance in the United States of the Compositions that are subject to this Agreement.  If requested by Company, Composer shall obtain from and deliver to Company an appropriate release, at no cost to Company, consenting to the theatrical performance in the United States of the Compositions. Notwithstanding anything to the contrary, however, where it is, or may from time to time be, unlawful for the performing rights society, or any of its affiliated bodies, to collect performance fees, or where the society, or any of its affiliated bodies, does not, from time to time, for any reason whatsoever, actually maintain a regular system of collecting performance fees, Company may authorize the performance of the Compositions in and as a part of productions, television programs and/or motion pictures in which they are included and the advertising, promotion and publicity thereof, or otherwise, without payments of any performance fees whatsoever to Composer,  the society, or to anyone else.

(c)      Composer shall be solely responsible for the payment of all costs whatsoever ("Recording Costs") incurred in connection with the recording (including re-recording required by Company for creative or other reasons until final delivery to and acceptance by Company of the Masters) and delivery of the Masters (dub ready), including, without limitation, the costs of all studios, tape, instrument rentals, engineers, musicians and all other parties rendering services in connection with the musical material, cartage and related expenses, travel, accommodations and per diems.  Notwithstanding the foregoing, Company shall reimburse Composer for any direct, out-of-pocket, business expenses specifically approved in advance by Company in writing.  Such reimbursement shall be made to Composer by Company following Company's receipt and acceptance of Composer's completed travel and expense (T&E) form or petty cash form (as applicable) accompanied by the original receipts.  If Company requires Composer to travel in connection with Composer's services as provided for under this Agreement, Company shall    furnish    Composer    with Company's    standard    travel accommodations    as determined in Company's sole discretion (which may include, one (1) round-trip, coach-class airline ticket, standard hotel accommodations of Company's choosing, ground transportation as determined in Company's sole discretion and Company's standard daily per diem rate).

(d)      Composer acknowledges that Company makes no warranty, representation or covenant that the Compositions will generate public performance income or any particular amount thereof.  Nothing herein shall be construed as vesting in Composer any right, title or interest whatsoever in the Compositions, the Masters and/or any programming within which the Masters or Compositions are embodied or in anything related thereto, or in any profits, proceeds or receipts thereof, or any lien or charge thereon.  As between Company and Composer, Company and its licensees and assigns shall have full and exclusive control of the distribution and other exploitation of the Compositions, the Masters and/or any programming within which the Masters or Compositions are embodied, all without any obligation to consult with or obtain

Composer's approval.   Nothing shall obligate Company to exploit the Compositions, the Masters and/or any programming within which the Masters or Compositions are embodied.

7. **EXCLUSIVITY:**
Composer's services shall be exclusive to Company during the Term.

8. **CREDIT:** Provided that (a) the Master is used as the theme song in an episode of the Project, **and** (b) the Master is used in the form in which it is submitted by Composer and shall have been principally composed by Composer, and (c) this Agreement has not been terminated for Composer's breach or default, then Composer will receive a credit in the end titles of the episode of the Project in which the Master appears as the theme song only, if songs are individually credited, to read substantially as follows: "Theme Song by Heavy Young Heathens" " or words to that effect, and such credit shall be in such size, style and place as Company may elect.   Such credit may be shared and/or squeezed. No misplacement, omission, or casual or inadvertent failure to comply with credit requirements shall be deemed a breach of this Agreement by Company.   Notwithstanding the foregoing, following Company's receipt of written notice from Composer of Company's failure to accord such credit, Company shall use reasonable efforts to cure prospectively any material failure (allowing for an adequate period of time after receipt of such notice to implement such correction but in no event shall Company be under any obligation to recall, re-issue or reprint episodes of the Project or any existing copies or materials), provided, that Company shall only be required to prospectively cure such failure if doing so is economically practicable (to be determined in Company's sole discretion). Composer's sole remedy for a breach by Company of any of the provisions of this Paragraph 8 or otherwise shall be an action at law for damages, it being agreed that in no event shall Composer seek, or be entitled to, injunctive or other equitable relief for breach of any of the credit requirements hereof or otherwise.   Notwithstanding anything to the contrary contained herein, in the event that individual episodes and/or programs relating to the Project are scheduled for consecutive exhibition or exploitation (*e.g.*, as a so called "double pump"/"marathon"), Composer acknowledges and agrees that Company shall only be required to accord to Composer the credit set forth in this Paragraph 8 only once in connection with the applicable "double pump" or marathon (rather than in connection with each individual program within the marathon). Composer's credit shall be required to be actually exhibited in connection with each episode only during such episode's premiere television exhibition.

9. **RIGHTS:**
(a)        All services rendered by Composer pursuant to this Agreement and the results and proceeds thereof, including, without limitation, all literary, dramatic, factual, artistic, photographic, visual, sculptural, musical and/or other material of whatever kind or nature created, written, contributed or suggested by Composer hereunder, as well as all inventions, processes and improvements, and all versions and revisions thereof, and all notes, ideas, "gags," suggestions, plots, characters, logos, titles, themes, songs, products and/or stories, whether or not reduced to writing or other tangible media, heretofore or hereafter created, written, contributed, developed, invented or suggested by Composer, including, without limitation, the Compositions and Masters, and whether or not actually used by Company (all such material, services, and the results and proceeds thereof are referred to collectively as the "Material"), have been and/or will be solely created by Composer as a "work made for hire" specially ordered or commissioned by Company for use as part of an audio/visual work within the meaning of the

U.S. Copyright Law, with Company being deemed the sole author, and, at all stages of completion, the sole and exclusive owner of the Material, and of all rights of every kind or nature, whether now known or hereafter devised (including, but not limited to, all copyrights, trademarks, patents and all extensions and renewals of same) in and to the Material in perpetuity throughout the universe and in all languages, with the right to use, exploit and advertise the Material and any programming within which the Masters or Compositions are embodied, in any form, manner and/or medium, whether now known or hereafter devised, without any further obligation whatsoever to Composer or any person or entity claiming through or on behalf of Composer.

(b)        If, under any applicable law, the fact that the Material is a "work made for hire" is not effective to place authorship and ownership of the Material and all rights therein in Company, or if it is determined that the Material or any part thereof does not constitute a "work made for hire" for Company within the meaning of the copyright laws of the United States, then to the fullest extent allowable and for the full term of protection otherwise accorded to Composer under such applicable law, Composer hereby assigns to Company irrevocably, exclusively, perpetually and throughout the universe all rights of every kind in and to the Material and any and all of Composer's right, title and interest in any programming within which the Compositions and/or Masters are embodied and any other works now or hereafter created containing any of the Material.  Without in any way limiting the generality of the foregoing, Company shall have the right to make all known or hereafter existing uses of the Material in perpetuity throughout the universe, including without limitation in productions, television programs and/or motion pictures or otherwise, in all media and all forms and all formats, including, without limitation, videocassette, videodisc, sound recording, publishing, music publishing, merchandising, character, sequel, remake, theme park, legitimate stage, electronic, interactive, digital, computer-assisted media and other new technologies, whether now known or hereafter devised, including, but not limited to, laser disc, cartridge, CD-ROM and other similar or dissimilar disc systems, interactive television/cable, all means of video and/or audio streaming, still or download, whether delivered to portable devices, personal computers, set top boxes, televisions or other forms of hardware via broadcast, syndication, basic cable, pay television, pay-over-the-air, closed circuit, hotel/motel, TVRO, SMATV, MDS, MMDS, DBS, video-on-demand, pay-per-view, datacasting, Internet protocol, wireless protocol, terrestrial radio, satellite radio, and any other devices and/or methods of delivery, in any and all media now existing or hereafter devised, and all allied, ancillary and subsidiary rights in and to each of the foregoing, and the right to make all changes in the Material as Company deems necessary or desirable, including, but not limited to, the right to revise, change, modify, translate, reformat, reprocess, dramatize, fictionalize, add material to and/or remove material from the Material as Company shall, in its sole discretion, deem appropriate.

(c)        Without in any way limiting the generality of the foregoing, Company and Composer are aware and hereby acknowledge that new rights of and to the Material may come into being and/or be recognized in the future, under law and/or in equity (collectively the "New Exploitation Rights"), and Composer intends and does hereby assign, grant and convey to Company, any and all such New Exploitation Rights in and to such results and proceeds. Company and Composer also are aware and do hereby acknowledge that new (and/or changed) technology, uses, media, formats, modes of transmission, and methods of distribution, dissemination, exhibition or performance (collectively the "New Exploitation Methods") are being, and inevitably will continue to be developed in the future, which would offer new

opportunities for exploiting the Material.  Composer intends and does hereby irrevocably assign, grant, and convey to Company any and all rights to such New Exploitation Methods with respect to such results and proceeds.

(d)         Composer shall not (i) utilize any material as the basis of the Masters or Compositions (including samples) or any arrangements hereunder which are believed to be in the public domain without first notifying Company of the identity of such material so that Company may verify the public domain status thereof; or (ii) use any material whatsoever not composed entirely by Composer, such as "samples" (whether or not in the public domain) without first obtaining Company's prior written consent in each instance.

(e)         Composer hereby irrevocably waives the benefits of any provision of law known as "droit moral", "moral rights", or any similar rights or principals of law in any country of the world which Composer may now or later have in the Material and Composer agrees not to institute or permit any action or lawsuit on the grounds that the Material or any other work based upon the Material constitutes an infringement of Composer's droit moral or is in any way a defamation or mutilation of the Material or any part thereof, or contains unauthorized variations, alterations, modifications, changes, or translations of the Material.  Composer expressly acknowledges that other works may or will embody all or part of the Material. Accordingly, if under any applicable law the above waiver or assignment by Composer of "droit moral" or "moral rights" is not effective, then Composer agrees to exercise such rights in a manner which recognizes the contribution of, and will not have a material adverse effect upon, such other parties.

(f)         Without limiting the generality of the foregoing, Composer hereby irrevocably and unconditionally waives any right or entitlement Composer may have pursuant to Sections 77-85 (inclusive) of Chapter IV of the Copyright Designs and Patents Act 1988, or any statutory modifications or enactments thereof or the laws of any other jurisdictions.  With respect to any of the Material, if and to the extent copyright registration therefor in any country/territory is required to be acquired in Composer's name, Company shall have the full right, power and authority to apply for such copyright registration(s) in Composer's name, whereupon Composer shall promptly assign/transfer such copyright registration(s) to Company.  Similarly, if any copyrights in and to any of the Material in any country/territory are required to be renewed and/or extended in the name of Composer, then Composer shall take all measures necessary to renew/extend the copyrights involved and promptly thereafter shall assign such copyrights (and all rights thereunder and otherwise) to Company for such renewal/extended term(s), without Company's having to pay any additional consideration therefor.

(g)         Composer, on Composer's own behalf and on behalf of Composer's successors-in-interest, heirs, executors, administrators and assigns, hereby assigns to Company in perpetuity all of Composer's economic rights in the Material and any derivative works based on such Material which are, at any time, granted by domestic, foreign, or multi-national legislation, including, but not limited to all rental and lending rights under legislation or directives (whether implemented pursuant to the EC Rental and Lending Rights Directive or otherwise) to which Composer may now be or hereafter become entitled with respect to the Material and/or any other works based upon the Material and/or any derivative works derived therefrom, including, but not limited to any blank audio/visual tape levy, rental, lending, public performance rights, so-called "performer's property rights" and/or rights in respect of satellite and cable retransmission

broadcasts in EC member states or otherwise. Composer agrees on Composer's own behalf and on behalf of Composer's successors-in-interest, heirs, executors, administrators and assigns, not to institute, support, maintain or authorize directly or indirectly any litigation or proceedings instituted or maintained on the ground that Company's (or its designee's) exercise of the rights granted Company in the Material in any way constitutes an infringement or violation of any such rental or lending rights as aforesaid. Company and Composer acknowledge and agree that the following sums are in consideration of, and constitute equitable remuneration for, the rental and lending rights provided for in this paragraph: an agreed allocation to the rental and lending rights of 3.8% of the compensation payable by Company to Composer for Composer's services as set forth in subparagraph 6(a) above. If under the applicable law of any territory or jurisdiction, any additional or different form of compensation is required to satisfy the requirement of equitable remuneration, then it is agreed that the grant to Company of the rental right shall nevertheless be fully effective, and Company shall pay Composer such compensation or, if necessary, the parties shall in good faith negotiate the amount and nature thereof in accordance with applicable law.

(h)       Company shall have the right, but not the obligation, to use (and authorize third parties to use) Composer's name, voice, likeness, and biography in connection with the Compositions, the Masters, and/or any programming within which the Compositions and/or Masters are embodied, and any uses thereof, in all media now known or hereafter devised in perpetuity throughout the universe, including, without limitation, for the purpose of advertising and promoting any programming within which the Compositions and/or Masters are embodied, the distributors of such programming and the programming services of MTV Networks.

10. **NON-UNION PRODUCTION:**
Composer acknowledges that Company is not a party to any collective bargaining agreements that might be applicable to the type of services provided hereunder, and Composer understands and agrees that neither this Agreement nor Composer's services hereunder shall be subject to any collective bargaining agreements, including, without limitation the American Federation of Musicians ("AFM") or the American Federation of Television and Radio Artists ("AFTRA"). This will cover any vocal services.

11. **RE-RECORDING RESTRICTION:**
Effective as of the date of this Agreement, and unless Company otherwise consents in writing, Composer shall not record, re-record, produce, arrange, or perform (as conductor or otherwise) for anyone other than for Company, any of the Compositions at any time. The foregoing shall be applicable whether or not any record company becomes entitled to issue a recording of all of such musical material, or any part thereof, by reason of the so-called "compulsory license" provisions of any applicable copyright law.

12. **SUSPENSION/TERMINATION:**
Subject to the terms of this Paragraph 12, Company shall have the right to terminate this Agreement for convenience with or without cause at any time during the Term. If any event of disability, default or force majeure occurs at any time during the Term of this Agreement, then notwithstanding anything to the contrary contained in this Agreement, Company shall have the right to suspend the Term of this Agreement. No compensation shall accrue or be payable to Composer under this Agreement during any such period of suspension. Company's payment of compensation to Composer during any period of suspension shall not be deemed a waiver by

Company of any of its rights under this Agreement, and Company may apply such payment(s) against any compensation accruing or coming due to Composer pursuant to this Agreement. Any suspension under this Agreement shall continue until Company's notice to Composer ending the suspension or until the cause of such suspension shall have ceased to exist, whichever first occurs, and, with respect to a suspension for disability or default, until Composer shall have reported to Company ready, willing and able to perform all of Composer's obligations hereunder.   Notwithstanding the foregoing, any period of suspension may, at Company's election, be extended to include such period of time as may be required by Company to make preparation for the utilization or resumption of Composer's services.   Composer shall resume rendering services upon such date following the lifting of any suspension as Company may designate.   If the period of any suspension under this Agreement shall include a starting date previously designated by Company, then Company may, at Company's election, cancel and/or postpone such starting date.   During any period of suspension Composer shall not render services for any other person or on Composer's own behalf.   If Composer is in default under this Agreement, then in addition to all other rights Company may have at law, in equity or otherwise, Company shall have the right at Company's election to terminate this Agreement during the continuance of such default (whether or not Company has first suspended Composer) and to seek the return by Composer to Company of any compensation paid hereunder for Services not rendered and/or accepted by Company prior to the occurrence of such default, but only after providing Composer two (2) business days to cure such default (if, but only if, in Company's good faith judgment, said default is curable).   In the event of Composer's disability, Company shall have the right, at Company's election, to terminate this Agreement at any time after the continuance of such disability for three (3) consecutive business days or for an aggregate of five (5) business days during any production period, or immediately in the event of death.   In the event that any period of force majeure continues for more than two (2) weeks, Company shall have the right, at Company's election, to terminate this Agreement.   In the event of any termination of this Agreement, Company shall be relieved of any and all further obligations to Composer under this Agreement, except that termination for any reason other than for default by Composer shall not relieve Company of its obligation to pay all accrued compensation with respect to services rendered by Composer and accepted by Company prior to such termination.   Company's rights under this Agreement (including, without limitation, its termination and suspension rights) are in addition to any other rights or remedies available to Company, whether at law, in equity or otherwise.

13. **WARRANTIES AND REPRESENTATIONS/INDEMNITY:**

(a)         Composer represents and warrants that: (i) Composer has the right to execute this Agreement and Composer has not entered into and will not enter into any commitment or agreement that will or might in any way conflict with Composer's obligations under this Agreement; (ii) the Material shall be wholly original with Composer and shall not be copied in whole or in part from or be based upon or be adapted from any other work and Composer has the full right and authority to grant the rights in the Material granted to Company hereunder; (iii) Composer has not signed, agreed to sign, nor will Composer sign during the Term hereof, an exclusive recording agreement and/or songwriter/publishing agreement or any other agreement that may affect Company's rights hereunder; (iv) Composer shall not collaborate with any third-party lyricists and/or composers, or with any recording artists/musicians under exclusive contract to any recording company, and shall not make use of any musical compositions not written/composed specifically and originally in connection with this Agreement, without Company's prior written consent; (v) neither the Material nor Company's use of the Material will

infringe or violate any rights of any person or entity, and Company shall not be required to pay or incur any sums to any person or entity as a result of Company's ownership, acquisition, use, or exploitation of the Material, except as herein provided; (vi) the Material is not and shall not be based in whole or in part on the life of any real person, except as approved in advance in writing by Company in each instance; (vii) the Material shall be suitable for their intended purpose; (viii) the Material does not and shall not violate the right of privacy or publicity of, or constitute a libel or slander against, or otherwise violate any other rights (including, without limitation, copyrights) of any kind or nature whatsoever of, any person or entity; (ix) the Material is not and shall not be the subject of any litigation or of any claim that might give rise to litigation (x) Composer is not subject to and will not collaborate with any third parties who are subject to any collective bargaining agreements (including, without limitation, AFM) that would affect the rights in the Material granted to Company hereunder; and (xi) Composer has paid all Recording Costs.

(b)       Composer shall indemnify and hold harmless Company, its parent, subsidiary and affiliated entities, and the shareholders, officers, directors, employees and agents of each of the foregoing, and any person(s) or entity(ies), in whole or in part, owning, financing, producing, distributing and/or otherwise exploiting the Material, as well as any and all licensees, successors, assigns and principals of each of the foregoing, and each of them, from and against any and all liabilities, claims, costs, damages or expenses (including, but not limited to, attorneys' and accountants' fees and costs, whether or not in connection with litigation) (collectively, "Damages") arising out of, resulting from, based upon or incurred because of or in connection with (i) a breach or claim which, if true, would constitute a breach, of any of Composer's representations, warranties or obligations contained in this Agreement; (ii) the malfeasance and/or negligence and/or other tortious acts or omissions committed by Composer and/or any agent, employee, guest or invitee of Composer; and/or (iii) any acts by Composer outside of the scope of Composer's services hereunder or contrary to Company's instructions in connection with the occurrence giving rise to such Damages.  Company may compromise or settle any such claims or legal actions made by a third party upon such terms as Company may determine.

14. **NOTICES:**
All notices and other communications between the parties hereto shall be in writing and shall be deemed received when delivered in person or by facsimile or three (3) days after being deposited in the mail, postage prepaid, certified or registered mail addressed to the other party at the addresses set forth on page 1 hereof, or at such other address as such party may supply by written notice; provided, however, that a notice for change of address shall not be deemed effective until received.

15. **MISCELLANEOUS:**

(a)       Composer is aware that federal law prohibits "payola" and "plugola," and Composer acknowledges that it is unlawful to accept anything of value (except the compensation payable hereunder) for promoting any product, service or company, or arranging for any person or product to appear, on the air.  Composer covenants that Composer shall not violate any such law.

(b)       Neither Composer nor any of Composer's agents or representatives shall, without Company's prior written approval in each instance, reveal the terms of this Agreement or issue

or authorize the publication or dissemination of any information, news stories or publicity relating to Composer's services hereunder or to Company, the Material, MTV, MTV2, MTV Films, Viacom Media Networks, Viacom International Inc., any VMN programming service, any distributor of programming within which the Compositions and/or Masters are embodied or any person associated with any of the foregoing, or any other of their policies and practices or any confidential or proprietary information that Company provides or to which Composer gains access in connection with Composer's services hereunder or otherwise; provided, however, that Composer may reveal the terms of this Agreement to Composer's personal representatives for legitimate business purposes only.

(c)     Composer shall not, at any time, use any of Company's or Viacom Media Networks' names, logos, tradenames or trademarks (including, but not limited to, MTV) or those of any of Company's or Viacom Media Networks' related companies, in any fashion, including, but not limited to, in connection with any kind of advertising, promotion, publicity, merchandise, tie-in, product or service.

(d)     The sole remedy of Composer in the event of any breach by Company hereunder or in connection with this Agreement shall be an action at law against Company to recover monetary damages actually suffered, if any (but in no event any consequential, special or punitive damages).  Composer shall not have any right to enjoin or seek to enjoin the exhibition or other exploitation of the Compositions, the Masters or any programming within which the Compositions and/or Masters are embodied (or any portion thereof) or other exploitation or any other production or work based thereon or upon the Material, or any element of thereof, or any advertising, promotion or publicity thereof, or to terminate or rescind any rights granted to Company hereunder or by this Agreement, or to obtain any other form of equitable or injunctive relief, any right to which Composer hereby waives.  At all times, Company shall have all rights and remedies which it has at law or in equity pursuant hereto or otherwise, all of which rights and remedies shall be construed as cumulative.

(e)     Company may freely assign or license this Agreement, and any or all of the rights granted by Composer to Company hereunder, to any other person or entity without restriction. Composer may not assign this Agreement, and any attempt to do so shall be void ab initio.

(f)     This constitutes the entire agreement between Company and Composer concerning the subject matter hereof, and cannot be modified except in writing by Composer and an authorized officer of Company.  No officer, employee or representative of Company has made any representation or promise in connection with this Agreement which is not contained herein. If this Agreement has been revised during the course of negotiation, such revisions and prior drafts incorporating such revisions or original language may not be used, and shall not be admissible, as evidence for any purpose in any litigation that may arise between the parties.  All parties were accorded the opportunity to be assisted by their representative in reviewing and agreeing to this Agreement and no ambiguity shall be resolved against any party because of its participation in the drafting of this Agreement.

(g)     This Agreement shall be governed and construed in accordance with the laws of the state of New York applicable to contracts entered into and fully to be performed therein and the

parties consent and agree to the exclusive jurisdiction and venue of the state and federal courts having jurisdiction over New York county, New York.

(j)      All representations, warranties, obligations, grants and indemnities of Composer pursuant to this Agreement are undertaken jointly and severally by each party comprising Composer and shall apply to each of them individually as well as to any combination of such parties.  When sums accrue and become payable to Composer hereunder, such sums shall be attributed fifty percent (50%) to Mardo and fifty percent (50%) to Marderosian.  If Company has the right to suspend and/or terminate the services of either party comprising Composer hereunder, then, at Company's election, Company may suspend and/or terminate this Agreement as to both individuals comprising Composer or only one such person rendering services, in which event the remaining Composer shall continue to render services pursuant to this Agreement.  Payment for the services of such remaining Composer shall be one-half (½) of the then unpaid compensation set forth in this Agreement.

Accepted and Agreed to:

_____
ROBERT J. MARDEROSIAN

_____
ARON MICHAEL MARDEROSIAN

**ON-SITE PRODUCTIONS INC.**

By: _____

Its: _____

Schedule "1"

## Technical Delivery Specifications

- All Tracks to be between 2.30-3.30 in length unless otherwise agreed

- Format: 48k 24bit

- Mix splits/stems to accommodate requests for 5.1 or alternate mixes

- Pro-tools / Logic or relevant files and sessions inc audio tracks where possible

- If  there is a vocal supply full, voice only and instrumental mixes

- All lyrics with translations if appropriate.

- Composer credits together with performance society membership association and membership numbers

- Composer full names and addresses and contact numbers

- For multiple composers provide share splits (Also included in Schedule 1)

- Materials are to be delivered to:

   Ernesto Elias
   Director, Creative Music Integration
   ph: 3107528403
   fx: 212-846-1472
   email:ernesto.elias@mtvstaff.com
   Viacom Media Networks
   2700 Colorado Avenue
   Santa Monica, CA 90404

-----End of Schedule 1-----

Exhibit "B"

| | Title | Composer | Performing Rights Organization | Publisher/ Percent Ownership | ISRC |
|---|---|---|---|---|---|
| 1. | "SMOOTH HAND" | Aron Michael Marderosian | | 50% | BMI |
| 2. | | | | | |
| 3. | | Robert J. Marderosian | | 50% | BMI |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |
| 16. | | | | | |
| 17. | | | | | |
| 18. | | | | | |
| 19. | | | | | |
| 20. | | | | | |
| 21. | | | | | |
| 22. | | | | | |
| 23. | | | | | |
| 24. | | | | | |
| 25. | | | | | |
| 26. | | | | | |
| 27. | | | | | |
| 28. | | | | | |
| 29. | | | | | |
| 30. | | | | | |
| 31. | | | | | |
| 32. | | | | | |
| 33. | | | | | |
| 34. | | | | | |
| 35. | | | | | |
| 36. | | | | | |
| 37. | | | | | |
| 38. | | | | | |
| 39. | | | | | |
| 40. | | | | | |
| 41. | | | | | |
| 42. | | | | | |
| 43. | | | | | |
| 44. | | | | | |
| 45. | | | | | |
| 46. | | | | | |
| 47. | | | | | |
| 48. | | | | | |
| 49. | | | | | |
| 50. | | | | | |

-----End of Exhibit B-----

758665