UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
TWELVE SIXTY LLC, ARON MARDEROSIAN,
and ROBERT MARDEROSIAN,

             Plaintiffs,

       - against -

VIACOM INTERNATIONAL INC., ON-SITE
PRODUCTIONS, INC.,

             Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

18 Civ. 93 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In this action, plaintiffs assert a single cause of action for breach of contract. Defendants move to dismiss the complaint for failure to state a claim under Rule 12(b)(6). For the reasons stated below, we grant defendants' motion and dismiss plaintiffs' complaint in its entirety with prejudice.

BACKGROUND[1]

Plaintiffs Aron Marderosian and Robert Marderosian are California-based song writers, musicians, and producers of musical recordings who are professionally known as "Heavy Young Heathens." Compl. ¶ 10. They own and operate plaintiff Twelve Sixty LLC, a California limited liability company, for purposes of licensing

---

[1] The following allegations are drawn from plaintiffs' complaint, see ECF No. 7, and are assumed to be true for purposes of this motion. See Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006).

1

their music.  Id. ¶¶ 1, 11.  In January 2014, plaintiffs entered into a loanout agreement ("Agreement") with defendant On-Site Productions Inc. ("On-Site"), a subsidiary entity of defendant Viacom International Inc. ("Viacom").  Id. ¶ 12.

Under the Agreement, plaintiffs agreed to create and deliver a theme song for defendants' television show called "Are You the One?".  Id. ¶ 13.  In exchange, On-Site agreed to pay plaintiffs $10,000.  Id. ¶ 14.  Plaintiffs were also entitled to receive their "writer's share" of public performance income ("PPI"), "which may be payable directly" from plaintiffs' performing rights society ("PRO") that collects and distributes royalties for public performances of musical works.[2]  Id. Ex. A ¶ 6(b).  Plaintiffs' receipt of their share of PPI "shall be the sole responsibility of [plaintiffs] and shall occur solely through the efforts and at the expense of [plaintiffs]."  Id.  In the Agreement, plaintiffs designated Broadcast Music, Inc. ("BMI") as their PRO.  Id. ¶ 14. Plaintiffs produced a song titled "Smooth Hand" ("the song"), which was accepted by defendants.[3]  Id. ¶ 16.  According to plaintiffs, defendants used the song "domestically and internationally as a theme song for the television program 'Are You the One?' and its related Viacom distributed spinoff series."[4]  Id.

---

[2] As the song's publisher, On-Site was entitled to the "publisher's share" of PPI and the entirety of all other publishing income.  Compl. Ex. A ¶ 6(b).
[3] Per the Agreement, defendants paid plaintiffs $10,000 for the song.
[4] Plaintiffs allege that defendants are both "broadcasters" and "publishers" of

Plaintiffs allege that defendants breached the Agreement by "failing to file cue sheets and/or require the filing of cue sheets in order for plaintiffs to properly collect their royalties," id. ¶ 17, even though they used the song as a theme song for the show and its multiple "spinoff series, commercials, teasers, and promos" that aired domestically and internationally, id. ¶ 23.[5] Because of defendants' alleged failure, plaintiffs claim that they were deprived of their proper share of PPI.[6]  Id. ¶ 22-23.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on January 5, 2018, see ECF No. 1, and defendants filed a motion to dismiss for failure to state a claim on May 25, 2018, see ECF No. 20.  After the motion was fully briefed, plaintiffs requested leave to file under seal a supplemental declaration in opposition to defendants' motion. See July 31, 2018 Letter from Michael G. Marderosian to the Court

---

the song.  See Feb. 20. 2019 Decl. of Robert Marderosian, ECF No. 33, ¶ 5.  As the owner of the song, defendants are considered "publishers."  Defendants are also considered "broadcasters" of the song because they broadcast "Are You the One?", for which the song serves as a theme song.

[5] Plaintiffs also alleged that defendants had registered the song under different composers' names and song title with a domestic PRO other than BMI. See Mem. of Law in Supp. of. Pls.' Opp. to Defs.' Mot. to Dismiss, ECF No. 24, at 3.  However, the documents plaintiffs submitted to support their allegation demonstrate that the registration at issue was in fact for a different song used in the same television show.  See Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 26, at 7-8.  Since there is no longer any issue as to plaintiffs' receipt of royalties for domestic broadcasts, see infra, plaintiffs cannot assert any claim based on defendants' alleged failure to properly register the song.

[6] In addition, plaintiffs alleged that defendants had failed to give them proper credit in the end credits for multiple seasons of the television show.  Compl. ¶ 24.  However, this allegation was stricken from the complaint in accordance with the parties' May 18, 2018 Stipulation and Order.  See ECF No. 19.

("Pls.' Request to File Supp. Decl."), ECF No. 27. The declaration attached an email designated as confidential by a third party in another action[7] in this District brought by plaintiffs and still pending. Id. The email included cue sheets that defendants submitted to BMI with respect to broadcasts of the song in Brazil. Id. According to plaintiffs, the cue sheets confirm that defendants "have the obligation to submit the cue sheets and are now attempting to do so to correct their previous misconduct." Id. Opposing plaintiffs' request, defendants argued that the proposed submission should not be considered by this Court because: (1) it was irrelevant to determining whether defendants had a contractual obligation to submit cue sheets; and (2) it was not included in plaintiffs' complaint.[8] See Aug. 3, 2018 Letter from Wook Hwang to the Court ("Defs.' Opp. to Pls.' Supp. Decl."), ECF No. 29. We reserved our ruling on plaintiffs' request until our consideration of defendants' motion to dismiss.

After reviewing the parties' briefs in response to defendants' motion, we held a telephone conference on February 14, 2019, to discuss defendants' factual challenge to plaintiffs'

---

[7] Twelve Sixty LLC, et al. v. Extreme Music Library Ltd., et al., 17-cv-1479 (PAC) (S.D.N.Y. filed on Feb. 28, 2017) ("Extreme Music Library action").
[8] Defendants also maintained that plaintiffs' submission of the confidential email violated the confidentiality order entered in the Extreme Music Library action. Judge Paul Crotty, while noting that it would have been preferable if plaintiffs had followed the procedure of the confidentiality order in his case, de-designated the email as confidential, thus permitting this Court to consider the email. See ECF No. 129, 17-cv-1479 (PAC).

allegations that defendants had failed to properly submit cue sheets for some domestic broadcasts. At the conference, we instructed plaintiffs to go through the cue sheets they had received from defendants and to identify specific domestic broadcasts for which they asserted defendants had not submitted cue sheets. After a flurry of letters, see ECF Nos. 33, 34, 35, the parties agreed at the subsequent oral argument that defendants had only failed to submit cue sheets for two domestic broadcasts.[9] See Mar. 4, 2019 Hr'g Tr., ECF No. 40, 10:7-19. Shortly after the oral argument, defendants submitted an affidavit stating that they had submitted cue sheets for the two broadcasts on March 6, 2019. See Mar. 8, 2019 Decl. of Anita Chinkes-Ratner, ECF No. 36-1, ¶ 3. Thus, plaintiffs' claims as to domestic broadcasts of the song are moot, and only claims related to defendants' alleged failure to submit cue sheets for foreign broadcasts of the song remain.

## DISCUSSION

Given that plaintiffs' claims with respect to domestic broadcasts are now moot, it would usually be unnecessary to discuss our analysis of the claims as if they were still alive. However, in this case, our analysis of the domestic claims informs our

---

[9] Plaintiffs also claimed that defendants had failed to submit cue sheets for the use of the song in the latest season of "Are You the One?". In response, defendants submitted an affidavit stating that cue sheets had in fact been submitted. See Feb. 23, 2019 Decl. of Anita Chinkes-Ratner, ECF No. 34-3.

analysis of defendants' obligation, if any, to provide cue sheets for foreign broadcasts.

In their motion to dismiss, defendants asserted that plaintiffs' cause of action is meritless because the payment of plaintiffs' share of PPI was "exclusively a matter between Plaintiffs and BMI." Mem. of Law in Supp. of Defs.' Mot. to Dismiss, ECF No. 22, at 3. Defendants also correctly noted that the Agreement clearly states that the writer's share was to "be payable directly from Composer's [PRO]" and that the receipt of these royalties "shall be the sole responsibility of Composer and shall occur solely through the efforts and at the expense of Composer." Compl., Ex. A ¶ 6(b). Nonetheless, under New York law,[10] all contracts imply a covenant of good faith and fair dealing in the course of performance. See, e.g., Smith v. General Acc. Ins. Co., 697 N.E.2d 168, 170 (N.Y. 1998); Dalton v. Educational Testing Serv., 663 N.E.2d 289, 291 (N.Y. 1995). This covenant embraces a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Dalton, 663 N.E.2d at 291. According to BMI (plaintiffs' designated PRO), it cannot pay royalties to song composers if cue sheets are not submitted properly by the song's publisher or broadcaster (i.e.,

---

[10] Pursuant to the choice-of-law provision of the Agreement, New York law governs plaintiffs' action. See Compl. Ex. A ¶ 15(g).

defendants).[11]  See Feb. 20. 2019 Decl. of Robert Marderosian, ¶
4.  Since plaintiffs cannot receive "the fruits of the contract"
- their entitled share of PPI under the Agreement - without
defendants' proper submission of cue sheets to BMI, we would have
found that defendants had an implied obligation to take such
affirmative steps to ensure plaintiffs' receipt of royalties for
domestic broadcasts.

However, defendants' implied obligation exists only as to
domestic broadcasts of the song because the Agreement references
only BMI, which "licenses public performances in the United States
only."[12]  Defs.' Opp. to Pls.' Supp. Decl.  As plaintiffs admitted
at oral argument, the Agreement does not contain: (1) any reference
to a foreign PRO; (2) any provision requiring defendants to make
payments to foreign PROs; or (3) any provision that entitles
plaintiffs to receive their share of PPI from PROs other than
BMI.[13]  See Hr'g Tr. 19:5-22.  Since the implied covenant of good

---

[11] In support of this position, plaintiffs filed under seal a portion of the
transcript from the deposition of Alison Smith, BMI's executive vice president,
that was conducted in the Extreme Music Library action.
[12] Plaintiffs alleges that, based on the BMI website's description of its
reciprocal agreements with PROs throughout the world, defendants should have
sent BMI cue sheets for foreign broadcasts of the song.  See Feb. 20. 2019
Decl. of Robert Marderosian, ¶ 10 & n.4.  However, the BMI website unambiguously
states, "[t]he foreign PROs calculate payments to BMI composers, songwriters
and publishers in accordance with their own distribution rules and remit royalty
payments to BMI."  How We Pay Royalties – International Royalties, BROADCAST
MUSIC, INC., https://www.bmi.com/creators/royalty/foreign_royalties (last
visited Mar. 20, 2019) (emphasis added).  In other words, BMI does not directly
handle PPI or cue sheets for broadcasts outside of the United States; rather,
it simply processes payments received from foreign PROs for composers whose
works are registered with BMI.
[13] According to plaintiffs, defendants' submission of cue sheets for broadcasts

faith and fair dealing "cannot be used to impose an obligation that is inconsistent with express contractual terms," see, e.g., Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 91 (N.Y. 1983), there is no basis to extend defendants' implied obligation to submit cue sheets for domestic broadcasts to broadcasts occurring outside of the United States.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate this case and any motions pending therein.

**SO ORDERED.**

Dated:     New York, New York
           March 25, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

of the song in Brazil demonstrates that defendants have the obligation to submit cue sheets for international broadcasts. See Pls.' Request to File Supp. Decl. However, since the Agreement's language "admits of only one reasonable interpretation" that BMI, a domestic PRO, is plaintiffs' designated PRO, we need not "look at extrinsic evidence of parties' intent" to determine whether defendants have an implied obligation to submit cue sheets to PROs other than BMI. Am. Home Prods. Corp. v. Liberty Mut. Ins. Co., 748 F.2d 760, 765 (2d Cir. 1984).